HERMAN D. M. MINER, Receiver, &c., Respondent, *v.* CHARLES K. JUDSON, Appellant.

(GENERAL TERM, EIGHTH DISTRICT, APRIL 18, 1870.)

The charter of a mutual insurance company provided, that upon alienation of property insured, the policy should be void and surrendered for cancellation, and the assured entitled upon the surrender and payment of his proportion of the losses incurred prior thereto, to his premium note, but that the alienee might have the policy, if assigned to him, ratified for his benefit, on giving security for the sum remaining unpaid upon such note, and thereupon should be entitled to the privileges, and subject to all the liabilities of the party originally owning the policy; the defendant who held a policy for which he had given his premium note to be paid in sums and at times, as required under the charter and by-laws of the company, by the directors, conveyed the insured property, and with the company's assent assigned the policy to his grantee, and it was then by like assent reassigned to the defendant as collateral security for a debt due him from the grantee, who had also given a note in like terms with that of the defendant to the company; the company also retained the defendant's note and the latter paid assessments, upon it for losses, happening after the assignments of the policy. In an action by a receiver of the company against the defendant on his note.—*Held*, that the defendant was not liable thereon, and the plaintiff could not recover.

THE plaintiff brought this action as the receiver of the Jamestown Farmers' Insurance Company, upon a premium note made and delivered by the defendant to that company on the 20th day of August, 1853. The note was made and delivered in consideration of a policy of insurance, issued by the company to the defendant, upon a printing press, type, furniture, stock and materials owned by him, and situ-

Miner v. Judson.

ated in Randolph, in the county of Cattaraugus. By this policy, the company insured the defendant against loss and damage by fire upon such property, to the amount of $750 for the period of five years. The business of the company was exclusively that of mutual insurance, and by the terms of the defendant's note, he promised to pay the company, or its treasurer, for the time being, the sum of $165, in such portions, and at such time or times, as the directors of such company might, agreeably to its charter and by-laws, require.

By the evidence given upon the trial, which was had before a referee, it appeared that the defendant sold his property in Randolph to B. F. Morris, and with the consent of the company assigned over the policy to him. The assignment of the policy bore date the 8th day of December, in the year 1853, and the consent of the company to the assignment bore date on the 12th of December, 1853. The company at the same time consented that Morris might assign the policy to the defendant as a collateral security for a demand due to him from Morris, and for that purpose Morris, at the time when the policy was assigned to him, reassigned it as collateral security to the defendant. When the policy was assigned to Morris, he made and delivered his own note to the company for the payment of the premium, in the same amount, and the same form, as the note previously given for that purpose by the defendant. And the company still retained the possession of the defendant's note. This note was assessed by the directors of the company for the payment of losses incurred in 1854 and 1856, and the assessments made were paid by the defendant, and subsequent payments were made upon his note by the defendant, in printing, amounting to the sum of fourteen dollars. All the payments made upon it by the defendant, after the assignments of the policy, amounted to thirty-two dollars and fifteen cents. The losses, for the payment of which the assessment in controversy was made, accrued after the assignments of the policy, and the making and delivery of the new note by Morris.

Sections 3 and 13 of the charter of the Jamestown Farmers' Insurance Company, read respectively as follows :

" Section 3. All persons who shall insure with the said company, and also their heirs, executors, administrators, and assigns continuing to be insured in said company, as hereinafter provided, shall thereby become and continue members thereof during the period they shall remain insured by said company, and no longer."

" Section 13. When any property insured by this company shall be alienated by sale or otherwise, the policy shall thereupon be void and be surrendered to said company to be canceled ; and upon such surrender the assured shall be entitled to receive his deposit note upon the payment of his proportion of the losses and expenses that have occurred prior to such surrender; but the grantee or alienee, having the policy assigned to him, may have the same ratified and confirmed to him for his own use and benefit, on giving proper security, to the satisfaction of the directors, for such portion of the deposit or premium note as shall remain unpaid, and by such ratification and confirmation, the party causing such security to be given, shall be entitled to all the privileges *and be subject to all the liabilities,* to which the original party to whom the policy was given was entitled and was subjected under this charter."

The referee reported in favor of the plaintiff, and from the judgment entered upon the report the defendant appealed.

*A. H. Judson,* for the appellant.

*Stephen Snow,* for the respondent.

Present—MARVIN, TALCOTT and DANIELS, JJ.

By the Court—DANIELS, J.   The sole consideration for the defendant's note to the company was the agreement contained in the policy, to insure his property; and when that was terminated by a sale of the subject of the insurance it was con-

templated by the charter that the liability of the company under its agreement should cease, and that the defendant should incur no liability to contribute to the payment of losses occurring after that time. By the express provisions of the charter he continued to be a member of the company only so long as he continued to be insured by it. And when the property owned by him and insured by it, was alienated by sale, it was declared that the policy should be void and be surrendered to the company to be canceled ; and upon such surrender he should be entitled to receive his note upon the simple condition of paying his proportion of the losses and expenses occurring prior to such surrender. These provisions clearly intended that both the liability of the company upon its policy and the future liability of the defendant upon his note, should be terminated by force of the act of selling the subject-matter of the insurance. If he failed to surrender the policy as he was required to do by the charter when he made such sale, neither the liability of the company nor his own, could be prolonged by such failure; for no such consequence as a continuance of his liability for future losses was in that event provided for by the charter. The only consequence resulting from such failure would be that he could not secure the actual surrender of his note upon the payment of his proportion of prior losses and expenses. Without surrendering it the policy would become void by reason of the sale, and as the policy formed the only consideration for the note, the liability of the maker of it for future losses would necessarily cease from that time. (*Tuckerman* v. *Bigler*, 46 Barb., 375.) That this was the design of the provisions inserted in the charter upon the subject is shown by the right secured to the alience. For, after the purchase of the property insured, he, upon securing an assignment of the policy, could have it ratified and confirmed to him for his own benefit, on giving proper security, to the satisfaction of the directors, for the portion of the premium note remaining unpaid. And it was provided in the charter, that upon such ratification and confirmation, the alienee should

be entitled to all the privileges, and be subject to all the liabilities to which the original party to whom the policy was given was entitled and subjected under the charter. These are the only legal consequences resulting from the revival of the insurance in favor of the alienee; and the continued liability of the vendor is not among them. On the other hand, the revival of his liability is plainly inconsistent with the results declared and provided for. Because the assignee and vendee is to become subject to all the liabilities of the original party, upon the policy being revived and continued in his favor. And that could not be true, if the person originally insured still continued liable upon his note. But beyond that, the charter provided that the vendee and assignee could have the policy ratified, and confirmed to him for his own use and benefit, not for the use or benefit of the vendor, and not upon his deposit note, but solely upon the assignee and vendee furnishing the proper security for that purpose. By that means the policy rendered void by the sale could be revived as an insurance in favor of the assignee and vendee. He was provided with the means of rendering it an insurance in his own favor, for which it would have been entirely unreasonable, as well as unjust, to have imposed a liability for the premium upon the vendor.

This view of the charter is confirmed by the mode in which the business was actually transacted. For the note taken by the company from the vendee was in form precisely the same as that taken when the policy was issued, from the defendant. This note, and the revival of the policy by the confirmation and ratification of the company was, in legal effect, a new contract between it and the vendee of the insured property. For it rendered the company liable to pay him for any loss incurred by means of injury to the property by fire during the future portion of the term mentioned in the policy, and bound him to pay the entire consideration for the insurance. And these new agreements were plainly designed to supply the places of those that had been avoided by the sale. The effect of the sale of the property, the

assignment of the policy, and its revival as an insurance to the vendee upon the liability of the defendant on his note, was not changed by the circumstance that he afterward, with the assent of the company, received an assignment of the policy as collateral security for a debt owing him by the assured. For it was no part of that transaction, that he should continue to be liable to the company upon his own note. The charter required no such continuance of his liability, in order to entitle him to hold the policy as a mere security, when it was in fact an insurance upon the property owned by the assignor. It was only when the assignee was also the purchaser of the insured property, and he desired to secure the revival of the policy, as an insurance for his own use and benefit, that the charter required him to secure the unpaid portion of the assignor's premium note. A simple assignee of the policy as security, was within neither the language, nor the spirit of that portion of the charter.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

MARVIN and TALCOTT JJ., concurring. Judgment reversed.